**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 16-20461-CR-MARTINEZ(s)**

**UNITED STATES OF AMERICA**

**v.**

**MILDREY GONZALEZ and**
**MILKA ALFARO,**

        **Defendants.**

_____/

**THE UNITED STATES OF AMERICA'S SENTENCING MEMORANDUM AND**
**OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORTS**

The United States of America respectfully submits this memorandum for the Court's consideration in connection with the sentencing of Mildrey Gonzalez ("Gonzalez" or "Defendant Gonzalez") and Milka Alfaro ("Alfaro" or "Defendant Alfaro," and together with Gonzalez, "Defendants"). For the reasons below, the Court should adopt the findings of the United States Probation Office ("Probation") with regard to the calculation of the applicable United States Sentencing Guidelines ("U.S.S.G.") ranges, except for with respect to calculation of Defendants' respective criminal history points (D.E. 226, 227). Specifically, the United States objects to inclusion of criminal history points based upon Defendants' convictions in case no. 16-CR-20507-KMM because, in the government's view, the conduct underlying those convictions falls within the scope of relevant conduct, and thus is part of the instant offense for purposes of the U.S. Sentencing Guidelines. *See* U.S.S.G. § 4A1.2 cmt. n.1. Further, the United States recommends that the Court impose a sentence at the low end of the applicable U.S.S.G. range for each defendant (Gonzalez: 135-168 months; Alfaro: 151-188 months), which will provide punishment for their

involvement in the instant offense that is sufficient, but not greater than necessary, to accomplish the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

## I.    **Procedural History and Offense Conduct**

The counts of conviction in this case stem from Gonzalez and Alfaro's roles as the masterminds of a fraud scheme that cost Medicare in excess of $22 million.  As Gonzalez and Alfaro have each conceded in their signed factual proffers (D.E. 201, 204), from in or around 2011 through June of 2016, they co-owned and operated seven home health agencies, each of which submitted false and fraudulent claims to Medicare.[1]  Defendants paid off nominee owners to mask their ownership interests; paid recruiters to bring in, and bribe, beneficiaries; paid medical professionals kickbacks in return for home health prescriptions; and paid others to launder millions of dollars.  Throughout the scheme, Gonzalez and Alfaro utilized shell corporations to funnel fraud proceeds back to themselves.  They also used the proceeds to fuel a lifestyle of luxury, including purchases of sports cars and payments for luxury properties.  After law enforcement agents executed a search warrant at one of Defendants' home health agencies in February 2016, they swiftly liquidated assets, converted checks from numerous accounts to cash, and transferred their substantial real estate holdings into nominees' names.  Then, Alfaro and Gonzalez fled the country.

In April 2016, Gonzalez briefly re-entered the country, unsuccessfully attempted to withdraw approximately $1.7 million—the proceeds from the sale of one of their properties—from frozen bank accounts, and then left the United States again, undetected.  On June 4, 2016, Defendants arrived at Miami International Airport from the Dominican Republic with more than

---

[1] The agencies listed in Defendants' factual proffers are:  MA; Golden; Metro Dade; Nova; Finetech; Homestead; and Inar.  The indictment names six of these seven agencies; Inar is solely named in their factual bases (*see* D.E. 3, 201, 204).

$2.4 million in bulk cash concealed in diaper bags, pouches and luggage—none of which was reported on customs forms, which require disclosure of currency over $10,000 USD.  As a result of these acts, on June 6, 2016, Defendants were separately charged with bulk cash smuggling and related federal offenses.  *See* 16-20507-CR-MOORE.  Thereafter, they were released on bond.

On June 22, 2016, Gonzalez and Alfaro were arrested in connection with the charges in this case, which arose from their central roles in orchestrating the health care fraud scheme.  After initially being released on bond in this case (as well as in the bulk cash case), as they have each now acknowledged in their signed factual proffers, Defendants engaged in witness tampering, failed to accurately disclose their assets, and suborned perjury (D.E. 201, 2014).[2]

In the following months, Defendants each pleaded guilty to bulk cash smuggling in case 16-CR-20507-MOORE on November 14, 2016, and were each sentenced to 37 months' imprisonment for that offense on February 10, 2017 (D.E. 235:PSR ¶ 75; D.E. 234:PSR ¶ 76).

Thereafter, on March 2, 2017, Defendants entered guilty pleas in the instant case (D.E. 201, 202, 203, 204).

## II.     The Applicable Guidelines Range – Alfaro

Alfaro pleaded guilty to Count 1 of the Superseding Indictment, which charged her with conspiring to commit health care fraud and wire fraud, in violation of 18 U.S.C. § 1349 (D.E. 203, 204).  The PSR concludes that, pursuant to U.S.S.G. § 2B1.1(a)(1), Alfaro has a base offense level of seven; the loss amount is more than $9,500,000 but less than $25,000,000, resulting in an increase of 20 levels, pursuant to § 2B1.1(b)(1)(K-L); Alfaro was convicted of a federal health care offense involving a government health care program that resulted in a loss of more than $20,000,000, resulting in an increase of four levels, pursuant to § 2B1.1(b)(7)(A), (B)(iii); Alfaro

---

[2] Judge Garber consequently revoked Defendants' bond on August 2, 2016.

engaged in obstruction of justice, warranting a two-level enhancement, pursuant to § 3C1.1; and Alfaro was an organizer or leader of the scheme, warranting a four-level increase under § 3B1.1(a). In addition, the PSR includes a three-level decrease based on acceptance of responsibility, resulting in a total offense level of 34.  (D.E. 235:PSR ¶¶ 63-73.)

With respect to criminal history, the PSR recommended, solely based upon Alfaro's conviction in case 16-CR-20507-MOORE, that Alfaro receive three criminal history points, resulting in a criminal history category of II (D.E. 235:PSR ¶¶ 75-76).

### III.   The Applicable Guidelines Range – Gonzalez

Gonzalez pleaded guilty to Counts 1(a) and 2 of the Superseding Indictment, which charged her with conspiring to commit health care fraud, in violation of 18 U.S.C. § 1349, and health care fraud, in violation of 18 U.S.C. § 1347 (D.E. 201, 202).[3]  The PSR concludes that, pursuant to U.S.S.G. § 2B1.1(a)(2), Gonzalez has a base offense level of six; the loss amount is more than $9,500,000 but less than $25,000,000, resulting in an increase of 20 levels, pursuant to § 2B1.1(b)(1)(K-L); Gonzalez was convicted of a federal health care offense involving a government health care program that resulted in a loss of more than $20,000,000, resulting in an increase of four levels, pursuant to § 2B1.1(b)(7)(A), (B)(iii); Gonzalez engaged in obstruction of justice, warranting a two-level enhancement, pursuant to § 3C1.1; and Gonzalez, like Alfaro, was an organizer or leader of the scheme, warranting a four-level increase under § 3B1.1(a).   In addition, the PSR includes a three-level decrease based on acceptance of responsibility, resulting in a total offense level of 33.  (D.E. 234:PSR ¶¶ 61-74.)

---

[3] Gonzalez, unlike Alfaro, did not plead guilty to the wire fraud object of Count 1 of the Superseding Indictment.

With respect to criminal history, the PSR recommended, based upon Gonzalez's conviction in case 16-CR-20507-MOORE, that she receive three criminal history points, resulting in a criminal history category of II (D.E. 234:PSR ¶¶ 76-77).[4]

## ARGUMENT

**I.    As They Fall Within the Scope of Relevant Conduct, Defendants' Bulk Cash Smuggling Convictions Should Not Result In Any Criminal History Points.**

The government respectfully objects to the inclusion of criminal history points for Gonzalez and Alfaro stemming from their respective convictions for bulk cash smuggling in case 16-CR-20507-MOORE (*see* D.E. 234:PSR ¶¶ 76-77; D.E. 235:PSR ¶¶ 75-76).   Rather, the government submits that criminal history category I, not II, applies to Defendants based on the facts here.

Ordinarily, a sentencing judge should add three points to a defendant's criminal history category for each "prior sentence" of imprisonment exceeding one year and one month.   U.S.S.G. § 4A1.1(a).   However, U.S.S.G. § 4A1.2 defines "prior sentence" as "any sentence previously imposed upon adjudication of guilt . . . for conduct *not part of the instant offense*."   U.S.S.G. § 4A1.2(a)(1) (emphasis added).   The Guidelines commentary further clarifies that "[c]onduct that is part of the instant offense means conduct that is relevant conduct to the instant offense under the provisions of § 1B1.3 (Relevant Conduct)."   U.S.S.G. § 4A1.2 cmt. n.1.   Section 1B1.13, in turn, provides that relevant conduct includes:

> (A)   all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

---

[4] Gonzalez's prior criminal conduct also includes state-level arrests in 1990 for grand larceny, and in 2001 for insurance fraud relating to staged car accidents; neither case appears to have resulted in conviction (PSR indicates *nolle prosequi*), however (D.E. 234:PSR ¶¶ 78-79).

(B)  in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all acts and omissions of others that were –

> (i)   within the scope of the jointly undertaken criminal activity;
> (ii)  in furtherance of that criminal activity; and
> (iii) reasonably foreseeable in connection with that criminal activity;

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

*See* U.S.S.G. 1B1.3(a)(1)(A)-(B).

Here, the PSR attributes three criminal history points to each defendant as a result of their bulk cash smuggling offense convictions (case 16-CR-20507-MOORE).  These points should not apply, however, because the bulk cash smuggling offense meets the Guidelines' definition of relevant conduct, and thus is "part of the instant offense," per U.S.S.G. § 4A1.2(a)(1).  Notably, the offenses of conviction shared common accomplices (Alfaro, Gonzalez and Luis Alonzo) and a common purpose; they were part of an ongoing series of offenses largely intended to illicitly obtain profits from Medicare while evading detection by law enforcement.  *See* 1B1.3 cmt. n.5(A)-(B).  Moreover, the time interval between the offenses is overlapping, and the cash which Defendants smuggled into the United States included proceeds from the fraud offenses of conviction in this case.  *See id.*  Accordingly, the criminal history points attributed to Gonzalez and Alfaro in the PSR should be deducted, yielding criminal history category I for each of them.

## II.    A Four-Level Enhancement for Defendant Gonzalez's Role As An Organizer/Leader of the Criminal Activity Is Warranted.

The United States concurs with Probation's recommendation to impose a four-level role enhancement for both Defendants (D.E. 234:PSR ¶ 68; D.E. 235:PSR ¶ 67).  Counsel has indicated that Defendant Gonzalez does not intend to contest imposition of a four-level role enhancement despite the plea language.  Accordingly, the Court should apply the four-level role enhancement.

### III.  **The United States' Loss Estimate Is Reasonable And Appropriate.**

The Court should adopt Probation's recommendation to enhance both Gonzalez and Alfaro's sentences based upon a loss estimate of approximately $22,906,267.41.  The table below summarizes the payments made by Medicare via electronic funds transfer ("EFT") to the home health agencies secretly owned and operated by Defendants during the relevant time periods of their ownership.  This is also the restitution amount the United States is seeking in this case, and defense counsel Marc Seitles, Esq., has represented that Defendants do not object to this amount.

| Name | Nominee | Nominee Sunbiz Start | First EFT Date | Last EFT Date | Total Paid via EFT |
|---|---|---|---|---|---|
| FINETECH HOME HEALTH | J.R.P.G. | 2/11/2015 | 2/11/2015 | 12/15/2015 | $2,492,730.28 |
| GOLDEN HOME HEALTH | Ramon Collado | 3/17/2014 | 4/3/2014 | 2/23/2016 | $5,033,146.82 |
| HOMESTEAD HOME HEALTH CARE | E.R. | 4/3/2013 | 8/12/2013 | 10/29/2014 | $5,085,799.25 |
| MA HOME HEALTH | L.E. | 3/17/2011 | 3/17/2011 | 6/11/2014 | $7,024,268.74 |
| METRO DADE HOME HEALTH | Juan Castillo Mayedo | 3/5/2015 | 3/10/2015 | 10/16/2015 | $1,045,194.59 |
| NOVA HOME HEALTH CARE | J.F. | 5/13/2014 | 5/16/2014 | 1/13/2015 | $2,225,127.73 |
| | | | | | $22,906,267.41 |

7

**IV.** **Gonzalez Should Be Sentenced to 135 Months Of Imprisonment, and Alfaro Should Be Sentenced to 151 Months of Imprisonment, Sentences At The Low End of Their Respective Applicable Advisory Guidelines Ranges.**

With a criminal history category of I, Gonzalez's advisory guidelines range is 135 to 168 months of imprisonment.  The United States respectfully recommends that Gonzalez be sentenced to a term of imprisonment at the low end of that range.

With a criminal history category of I, Alfaro's advisory guidelines range is 151 to 188 months of imprisonment.  The United States respectfully recommends that Alfaro be sentenced to a term of imprisonment at the low end of that range.

Defendants have accepted responsibility for their crimes and should be afforded the benefits of their plea bargains.  These sentences will provide punishment that deters other actors in the community who may seek to engage in Medicare fraud, as well as punishment that is sufficient, but not greater than necessary.  *See* 18 U.S.C. § 3553(a).  Even if there is no risk that Alfaro or Gonzalez will reoffend, the Eleventh Circuit has explicitly emphasized the significance of "general deterrence . . . in white-collar cases, where the motivation is greed."  *United States v. Hayes*, 762 F.3d 1300, 1308-09 (11th Cir. 2014); *see also, e.g.*, *United States v. Kuhlman*, 711 F.3d 1321, 1328–29 (11th Cir. 2013) (vacating, as substantively unreasonable, sentence of time served, which represented a 57-month downward variance, for defendant responsible for $3 million health care fraud scheme, noting that "[s]uch a sentence fails to achieve an important goal of sentencing in a white-collar crime prosecution:  the need for general deterrence," and that "[w]e are hard-pressed to see how a non-custodial sentence serves the goal of general deterrence."), *cert. denied*, 134 S. Ct. 140, 187 L. Ed. 2d 38 (2013).

The scope and duration of the fraud is significant—it spanned several years and involved recruitment and exploitation of many co-conspirators.  A Guidelines range sentence adequately reflects the seriousness of the scope and duration of the offense.

Moreover, while Defendants are first-time health care fraud offenders, estimates suggest that more than seventy percent of fraud offenders, which includes the vast majority of white collar offenders, have little or no criminal history.  *See* Selected Sentencing, Guideline Application, and Demographic Information for § 2B1.1 Offenders, Fiscal Year 2012, U.S. SENT'G COMM'N (Sept. 18, 2013), *available at* http://www.ussc.gov/Research_and_Statistics/Research_Projects/ Economic_Crimes/20130918-19_Symposium/Selected_Sentencing_Guideline_Application_ Demographic_Info.pdf.  This suggests a particular need to deter those in the community who, like Defendants in this case, chose to commit fraud.

**CONCLUSION**

For the reasons set forth above, the United States respectfully requests that the Court (1) sustain the government's objections to the criminal history calculations based upon Defendants' convictions in case no. 16-CR-20507-MOORE (*i.e.*, paragraph 75 of Alfaro's PSI (D.E. 227) and paragraph 76 of Gonzalez's PSI (D.E. 226)); (2) find that the applicable U.S.S.G. range of imprisonment is 135-168 months for Gonzalez, and 151-188 months for Alfaro; and (3) impose sentences upon Gonzalez and Alfaro at the low ends of their respective applicable U.S.S.G. ranges.

Respectfully submitted,

SANDRA MOSER, ACTING CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

BENJAMIN G. GREENBERG
ACTING UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA


By:      */s/ Lisa H. Miller*
LISA H. MILLER
Florida Special Bar No. A5502054
Assistant United States Attorney
United States Attorney's Office
Southern District of Florida
99 N.E. 4th Street
Miami, Florida  33132
Tel:  (786) 360-9775
Email:  Lisa.Miller@usdoj.gov

L. RUSH ATKINSON
Florida Special Bar No. A5502008
Trial Attorney
United States Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue NW
Washington, DC 20005
Tel: (202) 305-7413
Email: Lawrence.Atkinson2@usdoj.gov

## **CERTIFICATE OF SERVICE**

I, Lisa H. Miller, hereby certify that on June 8, 2017, a copy of this pleading was caused to be served on all parties via the Court's electronic filing system.

/s/ *Lisa H. Miller*
Assistant U.S. Attorney