**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.  16-20461-CR-MARTINEZ**

**UNITED STATES OF AMERICA,**

     **Plaintiff,**

**vs.**

**MILDREY DE LA CARIDAD GONZALEZ,**

     **Defendant,**

----------------------------------------/

**OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT AND SENTENCING MEMORANDUM**

     Mildrey de la Caridad Gonzalez, through counsel, hereby files her Objections to the Presentence Investigation Report, and Sentencing Memorandum, and in support thereof states:

**INTRODUCTION**

     Mildrey De La Caridad Gonzalez is a 62 year old mother and grandmother who  left Cuba in 1980, arrived in Miami in 1982, and became a United States citizen in 2006.  She has been in continuous custody since August 2, 2016,  and she  is currently being treated at FDC for many health problems, including osteoarthritis, urinary tract infection, gastritis, diverticulitis  of the intestine, irritable bowel syndrome, hyperlipidemia, hypermetropia, presbyopia, and chronic  obstructive pulmonary disease (COPD).  She has a long history of depression since her younger sister committed suicide in 2004, and she was recently advised by FDC medical staff  they suspect she has breast cancer after an initial exam, mammogram and biopsy.  She has accepted her responsibility for her actions in two cases, agreed to forfeit properties and money valued in excess of $5,000,000 and is

fully cooperating with the United States.

## OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT

**PARAGRAPH 76**

Ms. Gonzalez objects to the three criminal history points assigned to related case 16-20507-CR-MOORE.   Pursuant to § 4A1.1(a), "add 3 points for each prior sentence of imprisonment exceeding one year and one month."   The parties agree the money involved in the bulk cash smuggling in 16-20507-CR-MOORE was the proceeds of the fraud charged in the instant offense; therefore, the offense charged in paragraph 76 is not a "prior sentence" subject to criminal history points.   Pursuant to § 4A1.2(a)(1), "the term 'prior sentence' means a sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere, for conduct not part of the instant offense."

Further consideration is the Introductory Commentary to § 3D - Multiple Counts.   The grouping rules for multiple counts "apply to multiple counts of conviction (A) contained in the same indictment or information; or (B) contained in different indictments or informations in which sentences are to be imposed at the same time or in a consolidated proceeding.   The single 'combined' offense level that results from applying these rules is used."   With that said:

• Had the government charged paragraph 76 with the instant offense, the counts would have been grouped under § 3D1.2(c) and the adjusted offense level would not be higher than level 37, § 3D1.3(a), because when counts are grouped under § 3D1.3(c), only the higher offense level applies. The offense level in 16-20507-CR-MOORE is 21; the offense level in the instant offense is 34.

• Had the courts agreed to consolidate these cases for sentencing, the above would still apply.

• According to paragraph 7 of the PSR and the written Plea Agreement signed by the parties,

"the parties further agree that they will recommend that any sentence imposed in this case run concurrent with the sentence imposed in case no. 16-20507-CR-MOORE.

This joint recommendation for a concurrent sentence is an effort to treat both cases as if they were consolidated for sentencing. This is consistent with both the relevant conduct provisions of § 1B1.3, and the imposition of sentence when an undischarged sentence exists, § 5G1.3(b). Therefore, Ms. Gonzalez should be sentenced as a criminal history category I offender.

In sum, applying criminal history points in the related case would penalize Ms. Alfaro for procedural decisions made by the government and the courts beyond her control. The total offense level should be 34, criminal history category I, with an advisory guideline range of 151 to 188 months.

## PARAGRAPH 108

The advisory guideline range should be 151 to 188 months.

## SENTENCING MEMORANDUM

### A.    COOPERATION

Notwithstanding the above, we believe even without a Government sponsored motion, this Court may consider Mildrey Gonzalez's cooperation with the Government in further support of a concurrent sentence of 151 months, consistent with the agreement between the parties. Post *Booker*, the Government conceded in *U.S. v. Fernandez*, 443 F. 3d 19, 33 (2nd Cir. 2006) and appellate courts have held, that the sentencing judge may consider a defendant's cooperation as one factor bearing on a proper sentence, even if the Government did not make a "departure" motion, *U.S. v. Barner*, 572 F. 3d 1239 (11th Cir. 2009). Therefore, this Court, under 18 USC § 3553, may apply any weight to Mildrey Gonzalez's cooperation in determining a sentence consistent with the

agreement between the parties.

In support of the sentencing agreement between the parties, this Court may also consider *United States v. Knox*, 573 F. 3d 441 (7th Cir. 2009) (we agree with Davis that, as a general matter, a district court may consider a defendant's cooperation with the government as a basis for a reduced sentence, even if the government has not made a § 5K1.1 motion); *United States v. Fernandez*, 443 F. 19, 33 (2nd Cir. 2006) (reasoning that a district court should consider "the contention that a defendant made efforts to cooperate even if those efforts did not yield a Government motion for a downward departure pursuant to U.S.S.G. § 5K1.1"); *United States v. Doe*, 398 F. 3d 1254, 1260-61 (10th Cir. 2005) (concluding that "a defendant's assistance should be fully considered by the district court at sentencing even if that assistance is not presented to a court in the form of a § 5K1.1 motion"); *United States v, Murray*, 2005 WL 1200185 (S.D.N.Y. May 20, 2005 (unpub.) ("fact that defendant testified as witness for the government at time when he had nothing to gain provides support for his genuine contrition"); *United States v. Hubbard*, 369 F. Supp. 2d 146, 150 (D. Mass. 2005) (suggesting court can correct for government's bad faith not making motion under 3553(a)(2)(C); and *United States v. Khoury,* 62 F. 3d 1138 (9th Cir. 1995) (court may depart downward where government refuses to make § 5K1.1 motion because defendant went to trial although government initially offered to do so and where defendant's cooperation led to arrest of co-defendant). In the case before this Court, Milka Alfaro, through counsel, asks that her cooperation with the Government be fully considered in determining a sentence in her case, again, consistent with the agreement between the parties. Counsel will have further remarks about this at sentencing.

## B.    HEALTH AND AGE

Mildrey Gonzalez believes this Court may consider that at the age of 62, and already facing

many health problems, she presents a much lower risk of recidivism than most offenders.[1]  Effective November 1, 2011, § 5H1.1 was amended to state that age "may be relevant" as to whether a downward departure should be granted.  Under the *advisory* guidelines, age is not "ordinarily" relevant under § 5H1.1, but maybe in unusual cases or in combination with other § 3553 factors. In *United States v. Gray*, 453 F. 3d 1323 (11th Cir. 2006), the low end of the guidelines was 151 months for this child pornography case and the district court's sentence of 72 months was reasonable because the defendant was 64 years old with medical problems.  See also *United States v. Hildebrand*, 152 F. 3d 756 (8th Cir. 1998), in which a departure from 51 to 63 months to probation and six months home detention was affirmed because defendant was 70 years old with medical problems, and *United States v. Carter*, 538 F. 3d 784 (7th Cir. 2008), in which the guideline range was 87 to 108 months and the court affirmed a 24 month sentence, in part, because the defendant was 61 years old and age is relevant to risk of recidivism and "the likelihood of recidivism is a proper sentencing consideration, 18 USC § 3553(a)(2)(C).  Also, in *United States v. Lucania,* 379 F. Supp. 2d 288, 297 (E.D. N.Y. 2005), the district judge found that "Post-*Booker* courts have noted that recidivism is markedly lower for older defendants" and in *United States v. Nellum,* 2005 WL 300073 (N.D. Ind. Feb. 3, 2005)(unpub.), the court cited lower recidivism rates for older defendants and granted a downward departure.  In this case, Mildrey Gonzalez asks this be considered as a sentencing factor consistent with the agreement between the parties.

---

[1] Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines, at 12, 28 (2004)  www.ussc.gov/punlicat/Recidivism_General.pdf. ("Recidivism rates decline relatively consistently as age increases," from 35.5% under age 21 to 9.5% over 50.)

The "Silver Tsunami" And Sentencing - Age and Health as Mitigating Factors, by Evan A. Jenness and published in the September/October 2013 Champion, discusses the issue of elderly and infirmed inmates. What is "old" when it comes to sentencing a defendant to prison is not the equivalent of "old" in the outside world. The medium age of a federal defendant at sentencing is 34.[2] The National Institute of Corrections defines prisoners 50 and older as "elderly" and "aging",[3] and 15 states specifically define an "older" inmate as 50 or older.[4] Only 10.8 % of all federal defendants are over 50.[5]

United States Sentencing Guideline Section 5H1.4 makes clear that "an extraordinary physical impairment may be a reason to impose a sentence below the applicable guideline range." The prerogative of a federal court to reduce a sentence on account of a defendant's extraordinary medical problems is well established. *United States v. Coughlin,* 500 F.3d 813, 817-18 (8th Cir. 2007); *United States v. Jones,* 18 F.3d 1145, 1147-50 (4th Cir. 1994). In *United States v. Carmona-Rodriguez,* the court sentenced the defendant below the applicable guidelines because it found that necessary medical care is a factor that must be considered under the Guidelines. 2005 WL 840464, at *4 (S.D.N.Y. April 11, 2005); *see also United States v. McFarlin,* 535 F.3d 808 (8th Cir. 2008) ("Section 3553(a)(2)(D) states that a court may consider the need for medical care when determining a sentence."); *United States v. Nellum,* 2005 WL 300073, at *4 (N.D.Ind. Feb.3, 2005) (stating that

---

[2] Sourcebook, Table 6

[3] Dr. Joann B. Morton, An Administrative Review of the Older Inmate, USDOJ, National Institute of Corrections, 4 (1992)

[4] Old Behind Bars, at 17

[5] Sourcebook, Table 6

§ 3553(a)(2) and *Booker* "require judges to impose sentences that . . . effectively provide the defendant with needed medical care.").

In *Coughlin*, the Court explained that to determine if an extraordinary physical impairment exists, courts ask three questions: (i) "[i]s the particular defendant's physical condition such that he or she would find imprisonment more than the normal hardship?"; (ii) "[w]ould imprisonment subject him or her to more than the normal inconvenience or danger?" – i.e. would imprisonment worsen the defendant's condition or does the inmate require special care not provided by the BOP; and (iii) "[d]oes the physical condition have any substantial present effect on the defendant's ability to function?" 500 F.3d at 818 (citing *United States v. Rabins*, 63 F.3d 721, 728-29 (8th Cir. 1995)).

Notably, regardless of the Bureau of Prison's best intentions and assurances, the Court should still vary downward when there is a risk that the BOP cannot provide medical care in the most effective manner for a defendant during an extended prison term. *See United States v. Pasquantino*, 2007 WL 1149917, * 12 (4th Cir. 2007) (defendant's condition had grown worse since trial, and incarceration would "constitute a grave danger to his life" justifying a sentence substantially below the applicable guideline range); *United States v. Spigner*, 416 F.3d 708, 712 (8th Cir. 2005) (the court remanded to the district court to impose a lesser sentence based upon the defendant's high blood pressure which had resulted in the failure of his Kidneys, explaining that "section 3553(a) requires that a district court consider the need to provide medical care in the most effective manner when sentencing a defendant."); *United States v. Martin*, 363 F.3d 25, 50 (1st Cir. 2004) ("several serious medical conditions make Martin's health exceptionally fragile [and] . . . we are not convinced that the BOP can adequately provide for Martin's medical needs during an extended prison term.").

Moreover, even if the BOP can adequately treat a defendant's infirmity, the Court should still vary downward as a lengthy prison term is more arduous for an infirm inmate.  *United States v. Rausch*, 570 F.Supp.2d 1295 (D.Colo. 2008); *see also United States v. Hein*, 463 F.Supp.2d 940 (E.D. Wisc. 2006) ("the defendant was in extremely poor health, as evidenced by the medical and vocational records and his receipt of social security, a prison term for one in his condition would be extremely difficult. . . .").  In fact, in *United States v. Jimenez*, the court specifically rejected the Government's contention that a departure is warranted only if the physical ailment cannot be adequately treated by the BOP.  212 F.Supp.2d 214, 217 (S.D.N.Y. 2002).  Finding instead, that the court should look to whether the defendant's physical ailment affected the purposes of punishment, and vary downward accordingly.  *Id.*  Thus, a court should sentence a defendant who in bad physical health to less time of imprisonment.  *See United States v. White*, 506 F.3d 635 (8th Cir. 2007) (found that the district court did not err in imposing a sentence well below the applicable guideline range because of defendant's health problems which include diabetes, high blood pressure, weakness in his extremities, and difficulty walking).

Mildrey Gonzalez was hospitalized  in 2010 with double pneumonia and diagnosed with asthma.  She had been prescribed two inhalers and pregnazone before being committed to FDC.  In 2014, she was diagnosed with diverticulitis and several hospital stays since then have found  she suffers from Ostepenia, a low density bone disease,  hypertension, and she is in need of  colon surgery and further cancer screening.  She had been taking prescribed medications for these conditions before her incarceration.

Mildrey Gonzalez' initial examination at FDC on August 18, 2016,  recorded a significant history of PPD,  chronic obstructive pulmonary disease (COPD), hypertension and "high cardiac

risk." She was prescribed Zoloft, 50 mgs, to treat depression. She has had a recurring urinary tract infection which has been resistant to antibiotics and she has been prescribed Keflex, 4x per day, since February 15, 2017.

The initial examination at FDC on August 18, 2016, also found a "suspicious abnormality" in her right breast. A mammogram was conducted August 24, 2016 and a biopsy October 24, 2016. She was advised she needed a guided needle biopsy at a surgical consultation on November 8, 2016. She recently was transferred to Larkin Hospital for her biopsy and she is awaiting those results. Mildrey Gonzalez has suffered from depression and has abused Xanax since her younger sister committed suicide in 2004.

In addition to the above, Mildrey Gonzalez is currently being treated at FDC for many health problems, including osteoarthritis, urinary tract infection, gastritis, diverticulitis of the intestine, irritable bowel syndrome, hyperlipidemia, hypermetropia, presbyopia, and (COPD).

In an August 21, 2006 memorandum to all district court judges, the Administrative Office of the U.S. Courts indicated that the Bureau of Prisons will consider the presentence investigation report, the statement of reasons and judicial placement recommendations in assigning a CARE level to an inmate. There are four levels in the BOP CARE level system, which classifies inmates according to their healthcare needs. At 62 years of age and with Mildrey Gonzalez' current health problems, we believe she is already precluded from Level 1 and should be designated to at least Level 2, reserved for inmates who are stable out-patients, who can handle their own daily living activities, and their need for acute medical services is less than three months in duration, occur no more than every two years, and can be resolved without hospitalization. Level 3 is reserved for inmates who are fragile out-patients and Level 4 is for inmates with acute medical conditions. At

Mildrey Gonzalez' current age and health, any incarceration sentence imposed will, most likely, result in her designation to higher CARE levels. Her advancing age and ongoing health conditions will certainly tax the resources and finances of the Bureau of Prisons, place an added risk to the inmate, and exacerbate present conditions. Certainly, the medical evidence in this case is that every day Mildrey Gonzalez is incarcerated will be far more challenging to her and the BOP compared to the vast majority of the inmate population.[6] Even when the sentencing guidelines were mandatory, downward departures under § 5H1.4 were permissible. Again, Mildrey Gonzalez asks that her age and health be considered as sentencing factors under 18 USC § 3553 in fashioning a *reasonable and not greater than necessary sentence*.

## C.    PERSONAL CIRCUMSTANCES

Mildrey Gonzalez was first prescribed Xanax in 2004, when her youngest sister committed suicide. She was prescribed 2 mgs daily, but admittedly, she shopped doctors for additional prescriptions and took many times the prescribed amount for years. She also abused Fastin (Phentermmine), an energy and weight loss pill. Years later when she arrived at FDC, she experienced severe withdrawal symptoms, including heart palpitations, tremors and dry mouth.

During the instant offense and for more than the past five years, she has also abused alcohol. She typically consumed four to five glasses of wine and/or four cups of whiskey at night and usually drank herself to sleep. She attributes her alcohol abuse to self-medicating to relieve stress, anxiety, insomnia and depression.

---

[6] It is also anticipated that Mildrey Gonzalez' advancing age and health condition will require the BOP to eventually designate her and her daughter to separate facilities.

Mildrey has no treatment history but through counsel, she will ask this Court to recommend that the Bureau of prisons consider her for RDAP.  She understands this is only a recommendation and not a guarantee she will be admitted to the program.

**D.      CONCLUSION**

Based upon the facts and factors set forth above, Mildrey Gonzalez respectfully requests a sentence below the government's recommended sentence of 135 months.

**JUDICIAL RECOMMENDATIONS**

Ms. Gonzalez respectfully requests that the Court recommend 1) the Residential Drug and Alcohol Program; 2) placement at FPC Alderson in West Virginia; 3) confinement at the same BOP location as her mother Milka Alfaro, Reg. No. 09302-104.